IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PERKINS DELAWARE, LLC, a Delaware limited liability company;<br><br>Plaintiff,<br><br>vs.<br><br>MF CORNHUSKER MEMBER, LLC, a Delaware limited liability company; and MFP CORNHUSKER PROPERTIES LLC, a Delaware limited liability company;<br><br>Defendants. | 8:17CV332<br><br>MEMORANDUM AND ORDER |

This matter is before the court on Plaintiff Perkins Delaware, LLC's Motion to Compel Arbitration. ([Filing No. 32](#)). For the reasons stated below, Plaintiff's motion is denied.

BACKGROUND

In August of 2013, Plaintiff Perkins Delaware, LLC ("Perkins Member") and Defendant MF Cornhusker Member, LLC ("PF Member") formed Defendant MFP Cornhusker Properties, LLC ("MFP Cornhusker") for the purpose of operating commercial retail properties in Nebraska and South Dakota.[1] ([Filing No. 1 at CM/ECF p. 13](#)). In October of 2013, Perkins Member and PF Member executed

---

[1] MFP Cornhusker is listed as a defendant but Perkins Member does not seek affirmative relief against this defendant. Perkins Member listed MFP Cornhusker as a defendant because it "has an interest in this litigation sufficient to have a right to intervene." ([Filing No. 1 CM/ECF p. 12](#)). That said, MFP Cornhusker does not object to Perkin Member's Motion to Compel Arbitration ([Filing No. 32](#)).

an Operating Agreement (the "Agreement") for MFP Cornhusker. Under the terms of the Agreement, Perkins Member is the manager and PF Member is the agent.

Under Section 4.1 of the Agreement, as manager, Perkins Member was to manage all the affairs of MFP Cornhusker and to "make all decisions . . . except where PF Member's approval is required under this Agreement." ([Filing No. 1 at CM/ECF pp. 13–14](#)). "Major Decisions" were one such area in which Perkins Member needed the approval of PF Member to proceed. ([Id. at CM/ECF pp. 14, 38–40](#)). Section 4.1(b) of the Agreement outlines and defines what type of actions constitute Major Decisions. ([Id. at CM/ECF pp. 38–40](#)).

Section 4.1(d) contains an arbitration provision which could be utilized for disputes concerning Major Decisions:

> If Perkins Member and PF Member are unable to agree on the resolution of any Major Decision, either Member, by notice to the other Member, may require the resolution of the Major Decision to be made by an independent arbitrator specified in that notice. If either Member objects to the independent arbitrator designated therein within three (3) Business Days after it receives such notice and PF Member and Perkins Member fail to agree on an independent arbitrator, then either may request that the Omaha, Nebraska office of the American Arbitration Association (the "AAA") designate an independent arbitrator, in which case the selection of the arbitrator by the AAA shall be binding on the parties. The determination of the selected arbitrator shall be final and binding on all parties. . . . The decision of the arbitrator must be the resolution of the Major Decision proposed by either PF Member or by Perkins Member, and shall be rendered within thirty (30) days after the arbitrator's selection.

([Id. pp. 40–41](#)). Section 4.5 of the Agreement outlines the terms under which PF Member could seek to remove Perkins Member as the Manager to MFP Cornhusker. ([Id. at CM/ECF p. 43–44](#))

2

In October of 2013, MFP Cornhusker obtained a loan which was secured by a lien in all of its properties. ([Id. at CM/ECF p. 15](#)). In March of 2017, Perkins Member approached PF Member with a prospect for refinancing part of the loan. PF Member did not agree to the refinancing opportunity and refused to provide consent unless certain conditions were met. ([Filing No. 37 at CM/ECF p. 4](#)). At the end of March 2017, Perkins Member took unilateral action and refinanced the loan (the "refinancing event).

In mid-April of 2017, PF Member sought to enact the Removal Provision of the Agreement and remove Perkins Member as manager of MFP Cornhusker due to the refinancing event. And in August of 2017, Perkins Member removed PF Member as Manager of MFP Cornhusker.

Perkins Member filed its complaint on August 15, 2017 and PF Member removed the Complaint to this court on September 13, 2017. ([Filing No. 1](#)). In the complaint, Perkins Member alleges it was wrongfully removed as Manager of MPF Cornhusker. It primarily claims the refinancing event was not a Major Decision as defined in the Agreement and therefore removing it as Manager was improper. ([Id. at CM/ECF p. 18](#)). It alternatively argues that PF Member approved the refinancing event, or the event was not a material breach of the Agreement. ([Id.](#)).

As relief, Perkins Member seeks a declaratory judgment determining the rights, status, and legal relations of Perkins Member and PF Member and to determine the terms of the Agreement as they relate to PF Member's allegation of a removal event. ([Id. at CM/ECF p. 19](#)). Specifically, Perkins Member requests that this court enter a declaratory judgment finding as follows:

(a) The Refinancing event is not a Removal Event under the Operating Agreement, either because it was not a Major Decision defined in Section 4.1 of the Operating Agreement, PF Member approved the refinancing event, or the refinancing event was not a material breach of the Operating Agreement by Perkins Member;

(b) The portion of Section 4.5 of the Operating Agreement providing that upon a Removal Event PF Member may cause the forfeiture of a portion of Perkins Member's Residual Sharing Ratio is void and unenforceable;

(c) Alternative to (a), the terms of the Operating Agreement provide that before PF Member may unilaterally declare a Removal Event, the Refinancing event issue shall be submitted to an arbitrator as provided in Section 4.l(d) of the Operating Agreement, and if the arbitrator determines that the Refinancing event was a reasonable action to take by the Manager in the best interests of MFP Cornhusker, the dispute is resolved and there is no Removal Event;

(Id.). Perkins Member also seeks an injunction to enjoin PF Member from taking any action to enforce its claimed Removal Event including attempting to act as Manager of MFP Cornhusker. (Id. at CM/ECF pp. 20–21).

In the current motion, Perkins Member seeks to enact the arbitration provision contained in Section 4.1(d) of the Agreement and to compel the arbitration of this matter. It argues the following issues should be arbitrated:

1) Whether the refinancing event was a "Major Decision" as that term is defined in Section 4.1(b) of the Operating Agreement.

2) Assuming the refinancing event was a "Major Decision", whether the refinancing event was a transaction that was likely to be beneficial to the Company and thus a transaction the Company should have proceeded with.

4

> 3) All procedural matters relating to arbitrability, including whether Perkins Member's request for arbitration is sufficiently timely.

([Filing No. 32](#)). Perkins Member asserts arbitrating these events would resolve all claims in this matter. Defendant PF Member opposes Plaintiff's motion.

LEGAL ANALYSIS

Arbitration is favored and this court's role is to engage in a limited inquiry to "determine whether there is a valid agreement to arbitrate and whether the specific dispute at issue falls within the substantive scope of that agreement." [Larry's United Super, Inc. v. Werries](#), 253 F.3d 1083, 1085 (8th Cir. 2001). If the court so finds, Section 3 of the FAA requires a stay of proceedings subject to an arbitration agreement, and Section 4 empowers the court to compel the parties to proceed with arbitration. [9 U.S.C. §§ 3, 4](#). "The party resisting arbitration bears the burden of demonstrating the motion to compel arbitration should be denied." [Green Tree Financial Corp. -Alabama v. Randolph](#), 531 U.S. 79, 91 (2000).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." [AT & T Technologies v. Communications Workers of Am.](#), 475 U.S. 643, 648 (1986); [Volt Information Sciences v. Board of Trustees](#), 489 U.S. 468, 479 (1989) (stating Arbitration is "a matter of consent, not coercion," and if the parties have not "agreed to arbitrate, the courts have no authority to mandate that they do so."); see also [Churchill Environmental and Indus. Equity Partners, L.P. v Ernst & Young, L.L.P.](#), 643 N.W.2d 333, 336 (Minn. Ct. App. 2002)(citing [AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA](#), 242 F.3d 780, 782 (8th Cir. 2001)). When deciding whether to compel arbitration, a two-part test is applied. [USW, AFL-CIO-CLC v. Duluth Clinic, Ltd.](#), 413 F.3d 786, 788 (8th Cir. 2005). The

court must first decide whether a valid agreement to arbitrate exists. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). If so, the court must then determine if the parties' dispute falls within the scope of the arbitration agreement. AT & T Technologies, 475 U.S. at 649.

The parties do not dispute that there was an arbitration provision within the Agreement. The sole arbitration provision contained within the Agreement is located in Section 4.1(d) and provides that if Perkins Member and PF Member "are unable to agree on the resolution of any Major Decision," then either of them "<u>may</u> require the resolution of the Major Decision to be made by an independent arbitrator[.]" (Filing No. 1 at CM/ECF p. 14). As written, arbitration is discretionary and may be called upon by either member in the event of a deadlock regarding a Major Decision for the sole purpose of resolving said decision.

The claims at issue in this case fail to fit within the scope of arbitration provision for two main reasons. First, it is currently in dispute whether the refinancing event was a major decision. In fact, Perkins Member—which seeks arbitration of this matter—largely argues the refinancing event was not a major decision and requests that this court resolve this issue through a declaratory judgment. Second, a plain reading of the provision indicates that the arbitration provision was designed as a means of timely resolving major decision deadlocks as they arose. Accordingly, the provision must be enacted <u>before</u> the decision is made. In this case, Perkins Member and PF Member were deadlocked regarding the refinancing decision but instead of seeking a resolution through arbitration, Perkins Member took unilateral action. So the time for the arbitrator to determine the action to take on the refinancing decision has passed.

Perkins Member argues that this court cannot and should not rely on the argument that the arbitration provision must be enacted prior to the decision being made because that is a procedural matter for the arbitrator to determine. See [John Wiley & Sons v. Livingston, 376 U.S. 543, 557 (1964)](). The undersigned magistrate judge disagrees. The cases cited by Plaintiff typically involved claims which clearly fit within the scope of the arbitration provision at issue, but failed to meet the specific time limitations set within the arbitration provision. See, e.g., [Automotive Petroleum & Allied Industries Employees Union, Local No. 618 v. Town & Country Ford, Inc., 709 F.2d 509 (8th Cir. 1983)]() (requiring arbitration of all employment discharge disputes but setting a 5-day time limit for submitting grievances). The undersigned finds that unlike the cases cited by Plaintiff, here, the timeliness issue goes to the heart of the scope of the arbitration provision: The parties only agreed to arbitrate <u>ongoing</u> deadlocks.

This is further evidenced by the following wording in in the provision: "The decision of the arbitrator must be the resolution of the Major Decision proposed by either PF Member or by Perkins Member, and shall be rendered within thirty (30) days after the arbitrator's selection." ([Filing No. 1 at CM/ECF pp. 40–41]()).[2] This sentence makes clear that the sole reason the parties agreed to arbitrate was to avoid being stuck in a deadlock indefinitely and to facilitate quick decision making concerning MFP Cornhusker's business operations. They did not agree to arbitrate whether a certain action constituted a "major decision," nor to determine whether an already-made decision made was "reasonable."

---

[2] This wording even further shows the limited authority of the arbitrator if the provision was to be enacted. In essence, the parties agreed that the arbitrator would not even have full authority to create his or her own resolution, but must choose between the two outcomes proposed by PF Member or by Perkins Member.

For all the above reasons, the undersigned finds Plaintiff's claims are beyond the scope of the arbitration provision and are not subject to arbitration absent the current and mutual consent of the parties.

IT IS ORDERED:

1) Plaintiff Perkins Delaware, LLC's Motion to Compel Arbitration. ([Filing No. 32](Filing No. 32)), is denied.

2) Counsel for the parties shall confer and, on or before May 29, 2018, they shall jointly file a Form 35 (Rule 26 (f)) Report, a copy of which can be found at <http://www.ned.uscourts.gov/forms> in Word and WordPerfect format.

3) If one or more of the parties believes a planning conference is needed to complete the Rule 26(f) Report, or if the parties cannot agree on one or more of the deadlines identified or case progression issues raised in the Rule 26(f) Report, on or before May 22, 2018, a party shall contact my chambers at (402) 437-1670, or by email addressed to [zwart@ned.uscourts.gov](mailto:zwart@ned.uscourts.gov), to arrange a conference call.

Dated this 6th day of May, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge